**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DIANA VEGA ZAMUDIO, | Case No.: 1:21-cv-01673-JLT-BAK (SKO) |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION TO REMAND |
| v. | (Doc. 4) |
| AEROTEK, INC., et al. | |
| Defendants. | |

Diana Vega Zamudio asserts Defendants wrongfully terminated her employment following an on-the-job injury.  (Doc. 1-1.)  She contends the Court lacks diversity jurisdiction and seeks remand of the action to state court.  (Doc. 4.)  Defendants oppose remand, arguing the Court has diversity jurisdiction over the action.  (Doc. 10.)

The Court finds the matter is suitable for decision without oral argument, and no hearing will be held pursuant to Local Rule 230(g).  For the reasons set forth below, Plaintiff's Motion to Remand is **DENIED**.

I.    **Background and Procedural History**

Diana Vega Zamudio filed this action in the Superior Court of California, County of Kern (Case No. BCV-21-102423) on October 15, 2021, alleging state law employment claims against

1

Defendants.  (Doc. 1-1 at 1, 5–10.)  Zamudio asserts that, while employed by Defendants Aerotek, Inc. and Caterpillar Inc. in October 2019, she sustained an on-the-job injury to her back that impaired her ability to work.  (*Id.* at 3.)  Zamudio alleges that soon after her injury, Defendants terminated her employment.  (*Id.* at 5.)  Based on these allegations, Zamudio brought claims against Defendants for disability discrimination in violation of Cal. Gov't Code § 12490 *et seq.*, failure to provide reasonable accommodations in violation of Cal. Gov't Code § 12490 *et seq.*, failure to engage in good faith interactive process in violation of Cal. Gov't Code § 12490 *et seq.*, retaliation in violation of Cal. Gov't Code § 12490 *et seq.*, and wrongful termination in violation of public policy.  (*Id.* at 5–10.)  She sought to recover "a money judgment representing compensatory damages including lost wages, future los[t] wages, earnings, other employee benefits, and all other sums of money, together with interest on these amounts," "[g]eneral damages," "a money judgment for mental pain and anguish and emotion distress," "[a]ll other special and incidental damages," an "award of punitive damages," and "attorney fees as provided by statute . . . ."  (Doc. 1-1 at 12.)

Caterpillar removed the action to this Court under 28 U.S.C. § 1446 on November 18, 2021, with the consent of Aerotek, asserting that the Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).  (Doc. 1 at 3.)  Plaintiff filed this motion requesting that the Court remand the case to state court on December 17, 2021.  (Doc. 4.)  Caterpillar filed an opposition to the motion to remand on January 18, 2022.  (Doc. 10.)  Plaintiff filed a reply on January 25, 2022.[1]  (Doc. 12.)

## II.     Diversity Jurisdiction

Federal district courts maintain jurisdiction over civil actions between citizens of different states when the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a)(1).  When a party removes a case to federal court under 28 U.S.C. § 1446, that party bears the burden of establishing jurisdiction exists.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  "[A]ny doubt about the right of removal requires resolution in favor of remand."  *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d

---

[1] As the parties were informed on November 19, 2021, the Eastern District of California is in an ongoing state of judicial emergency.  (*See* Doc. 2-3.)  The action, including the motion now pending before the Court, was assigned to the undersigned on January 10, 2022.  (*See* Doc. 9.)

1   1241, 1244 (9th Cir. 2009) (citing *Gaus*, 980 F.2d at 566).

2   **A.  Diversity of Citizenship**

3          In its Notice of Removal, Caterpillar asserts the parties are completely diverse because no

4   Defendant is a citizen of the same state as Zamudio.  (Doc. 1 at 3–5.)  Caterpillar states that Zamudio is

5   a citizen of California, Aerotek operates and is headquartered in Maryland, and Caterpillar is

6   incorporated in Delaware and operates in Illinois.  (*See id.* at 3–4.)  Zamudio, in her Motion to Remand,

7   does not appear to seriously contest that diversity of citizenship exists, instead asserting only that

8   "Defendant [has] failed to establish that the amount in controversy exceeds the jurisdictional

9   minimum."  (Doc. 4 at 3.)  However, in the section of the Motion labeled "Conclusion," she states:

10          All of the individuals involved in this case are residents of California.  And
11          Defendant, notwithstanding its state of incorporation, is a resident of California that
           has extensive contacts within the state such that they would not be subjected to any
           degree of bias in state court, which fundamentally undermines the rationale for the
12          existence of diversity jurisdiction.

13   (*Id.* at 9.)  Zamudio does not cite to any applicable authority to support the conclusion that all parties

14   are residents of the state, nor does she address the issue of diversity of citizenship elsewhere in her

15   motion.  The Court therefore holds any argument by Zamudio as to diversity of the parties' citizenship

16   is waived.  *See Cal. Pac. Bank v. FDIC*, 885 F.3d 560, 570 (9th Cir. 2018) ("[A]rguments are waived

17   where the [party] does not present any argument to support its assertions and cites no authority.")

18   (citation omitted).  The Court therefore holds that complete diversity of citizenship exists in this case.

19   **B.  Amount in Controversy**

20          In evaluating the amount in controversy in a case, a court makes an "estimate of the total

21   amount in dispute, not a prospective assessment of defendant's liability."  *Lewis v. Verizon Commc'ns,*

22   *Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).  To establish the amount in controversy exceeds the $75,000

23   jurisdictional threshold, the removing party must present "summary-judgment-type evidence relevant to

24   the amount in controversy at the time of removal."  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117

25   (9th Cir. 2004) (quotations omitted).  When a complaint does not allege a specific amount in

26   controversy, the removing party must demonstrate by a preponderance of the evidence that the amount

27   in controversy requirement is satisfied.  *Lewis*, 627 F.3d at 400 (citing *Guglielmino v. McKee Foods*

28   *Corp.*, 506 F.3d 696, 699 (9th Cir. 2007)).  In meeting this burden, the removing party must provide

3

1   evidence establishing it is more likely than not that the amount in controversy threshold is met.  *Lenau*

2   *v. Bank of Am., N.A.*, 131 F. Supp. 3d 1003, 1005 (E.D. Cal. 2015) (citing *Sanchez v. Monumental Life*

3   *Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)).

4          The removing party need not prove subject matter jurisdiction in its removal notice, but instead

5   should provide "plausible allegations of the jurisdictional elements."  *Academy of Country Music v.*

6   *Cont'l Casualty Co.*, 991 F.3d 1059, 1069 (9th Cir. 2021) (citing *Arias v. Residence Inn by Marriott*,

7   936 F.3d 920, 922 (9th Cir. 2019)); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574

8   U.S. 81, 89 (2014).  Once removal jurisdiction is contested, the court must provide the removing party

9   a "fair opportunity to submit proof" as to jurisdiction.  *Ibarra v. Manheim Investments, Inc.*, 775 F.3d

10  1193, 1200 (9th Cir. 2015).

11         The Complaint does not state a specific damages figure.  Instead, Zamudio seeks "a money

12  judgment representing compensatory damages including lost wages, future los[t] wages, earnings,

13  other employee benefits, and all other sums of money, together with interest on these amounts,"

14  "[g]eneral damages," "a money judgment for mental pain and anguish and emotion distress," "[a]ll

15  other special and incidental damages," an "award of punitive damages," and "attorney fees as provided

16  by statute . . . ."  (Doc. 1-1 at 12.)  The Court will consider each category of potential awards in turn.

17              1.  Back and Future Lost Wages

18         In the Notice of Removal, Caterpillar calculates Zamudio's potential recovery of back wages to

19  be $63,720 (wages of $14.75 per hour, multiplied by 40 hours per week, multiplied by 108 weeks from

20  the time of her termination until the filing of the Notice of Removal).  (Doc. 1 at 6.)  Caterpillar also

21  calculates Zamudio's potential recovery of future wages to be $30,680 (wages of $14.75 per hour,

22  multiplied by 40 hours per week, with by an estimated 52 weeks to proceed to trial).[2]  (*Id.*)  Caterpillar

23  derives its wage and hour figures from a Declaration of Horacio Ramirez, an Aerotek, Inc. Employee

24  Relations Manager.  (Doc. 1-7 at 1.)

25         Zamudio does not contest the accuracy of Ramirez's figures, but does object to the calculations

26

27

28  [2] Caterpillar cites authority stating, "[w]hen the date of a trial is not set, courts have found one year from the date of removal to be a conservative trial date estimate."  *Baghdararian v. Macy's, Inc.*, 2021 WL 4026760, at *5 (C.D. Cal. Sept. 2, 2021).

4

as speculative because they do not consider mitigation of damages.  (Doc. 4 at 4–5.)  *See Silvia v. Sears Holding Corp.*, 2010 WL 399116, at *2 (S.D. Cal. Jan. 28, 2010) (finding no diversity jurisdiction when amount in controversy was based on lost wages calculation that assumed plaintiff's unemployment since termination); *Lamke v. Sunstate Equip. Co.*, 319 F. Supp. 2d 2019, 2033 (N.D. Cal. 2004) (considering potential mitigation of damages in assessing amount in controversy).  Caterpillar's lost wage calculations do not account for any potential substitute employment, nor does the Notice of Removal incorporate evidence Zamudio has remained unemployed since her termination in October 2019.  (*See* Doc. 1 at 6.)  Zamudio argues: "Considering Defendant presents no actual evidence of Plaintiff's current employment status, Defendant has failed to meet the preponderance of evidence standard with regards to Plaintiff's lost wages."  (Doc. 4 at 5.)

This Court has expressly rejected the notion that mitigation of damages should be subtracted from a calculation of the amount in controversy.  For example, in *Walker v. Aetna Health and Life Ins. Co.*, this Court denied a motion to remand, rejecting the plaintiff's argument that the amount in controversy calculation should incorporate "the possibility that Plaintiff has secured new employment since her termination."  *Id.*, 2021 WL 2661449, at *8 (E.D. Cal. June 29, 2021); *see also Pemberton v. Longs Drug Stores Cal.*, 2020 WL 4251950, at *5 (E.D. Cal. July 24, 2020) (holding mitigation of damages "is a potential affirmative defense" and "a potential defense does not reduce the amount in controversy for purposes of establishing federal jurisdiction") (citation omitted), *adopted in full*, 2020 WL 4607283 (E.D. Cal. Aug. 11, 2020).  Thus, the Court declines to find Caterpillar's lost wages calculation is speculative.

Caterpillar has met its burden in establishing the amount in controversy is satisfied based on potential recovery of back wages of $63,720 and potential recovery of future wages of $30,680.  *See Walker*, 2021 WL 2661449, at *8; *James v. Childtime Childcare, Inc.*, 2007 WL 1589543, at *2 (E.D. Cal. June 1, 2007) (amount-in-controversy requirement satisfied based on submissions regarding lost wages).

### 2.  Other Employee Benefits

In the Notice of Removal, Caterpillar suggests that non-wage employment related benefits could inflate the amount in controversy further but does not provide evidence for any particular figure.

5

(Doc. 1 at 7.)  Therefore, the Court declines to speculate as to the amount in controversy attributable to non-wage employee related benefits.

### 3.   Mental Pain, Anguish, and Emotional Distress

Courts may consider emotional distress damages in assessing the amount in controversy.  *See, e.g.*, *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001).  Where a plaintiff does not demand a specific dollar amount of recovery for claims of emotional distress, the removing party may introduce evidence of jury verdicts in analogous cases.  *Rivera v. Costco Wholesale Corp.*, 2008 WL 2740399, at *4 (E.D. Cal. July 11, 2008).

In the Notice of Removal, Caterpillar estimates potential recovery for pain and suffering and/or emotional distress to be at least $25,000. (Doc. 1 at 7.)  In support of this estimation, Caterpillar cites to Ninth Circuit precedent finding that a case was properly removed to federal court where "emotional distress damages would add at least an additional $25,000" to the value of a discrimination claim, where the plaintiff had lost wages of $55,000.  (*Id*. at 8, citing *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).)  Caterpillar also cites to case law surveying similar actions that led to significant emotional distress awards.  (Doc. 1 at 7, citing *Velez v. Roche*, 335 F. Supp. 2d 1022, 1038–40 (N.D. Cal. 2004) [surveying discrimination and harassment cases awarding emotional distress damages and concluding that "substantial jury awards of hundreds of thousands of dollars for non-economic  damages have been upheld where there is evidence  .  .  .  that the plaintiff suffered heightened mental anguish"].)

Zamudio contests this calculation because Caterpillar does not couple its citations to case law with any argument that they contain analogous facts to those in the Complaint.  (Doc. 4 at 5–6.)  *See Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1055 (C.D. Cal. 2012) (defendant must "proffer . . . evidence that the lawsuits and settlements alleged in the complaint are factually or legally similar to plaintiffs' claims").  She also distinguishes *Kroske* by noting the potential recovery amount in that case was based on interrogatory responses.  (Doc. 4 at 6, citing *Kroske*, 432 F.3d at 980.))

Caterpillar responds in its Opposition by pointing to jury verdicts in several additional cases. (Doc. 10 at 14–15.)  First, in *Molina v. Target Corp.*, which arose from a complaint with nearly identical causes of action to those raised by Zamudio, the court recognized three jury verdicts leading to

emotional distress awards of $75,000, $90,000, and $135,000.  *Id.*, 2018 WL 3935347, at *4 (C.D. Cal. Aug. 14, 2018).  Second, in *Hancock v. Time Warner Cable LLC*, a wrongful termination action, a jury returned a verdict including $450,000 in past non-economic loss and $100,000 in future non-economic loss.  *Id.*, 2015 WL 4771468 (Cal. Super. Ct. May 22, 2015).  Third, in *Ko v. Square Grp. LLC*, a disability discrimination action, a jury returned a verdict including $125,000 in emotional distress damages.  *Id.*, 2014 WL 8108413 (Cal. Super. Ct. June 16, 2004).

Zamudio attempts to distinguish *Hancock* because in that case, "an employee was falsely accused of violating the drug-free workplace policy and subsequently terminated after requesting a sick day."  (Doc. 12 at 3.)  She also distinguishes *Ko* by noting "the employee alleged a number of wage and hour violations in addition to the wrongful termination based claims."  (*Id.* at 3–4.)  The Court finds these distinctions unpersuasive.  Zamudio has not explained why, in *Hancock*, the factual circumstances she describes should lead to a different lost-wages calculation.  Although the claims in *Ko* are not identical to those Zamudio has brought, comparator cases need not be "perfectly analogous" but, instead, should "indicate[] that emotional distress damages in a successful employment discrimination case may be substantial."  *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 2034 (N.D. Cal. 2002).

Based on the underlying claims and volume of damages, the Court finds the jury verdicts described in *Molina*, *Hancock*, and *Ko* are sufficiently analogous to the allegations made in this case. Therefore, Caterpillar has met its burden in establishing that an award for pain and suffering and/or emotional distress of at least $25,000 is appropriate for consideration in calculating the amount in controversy.

### 4.   Punitive Damages

"It is well established that punitive damages are part of the amount in controversy in a civil action."  *Gibson*, 261 F.3d at 945.  However, a "mere possibility of a punitive damages award is insufficient to prove the amount in controversy requirement has been met."  *Geller v. Hai Ngoc Duong*, 2010 WL 5089018, at *2 (S.D. Cal. Dec. 7, 2010).  Instead, a defendant must submit facts sufficient to establish a punitive damages award is "more likely than not."  *See Conrad Assocs. v. Hartford Acct. & Indem. Co.*, 994 F. Supp. 1196, 1201 (N.D. Cal. 1998).

1   In the Notice of Removal, without conceding an award of punitive damages would be

2   warranted, Caterpillar estimates a potential award of punitive damages to be $94,400.  (Doc. 1 at 8.)  It

3   derives this figure by adopting a 1:1 ratio of punitive damages to lost back and future wages.  (*Id.*)  *See*

4   *Molina*, 2018 WL 3935347, at *4 (adopting a 1:1 ratio of punitive damages to damages for lost wages

5   as benefits for purpose of assessing amount in controversy); *see also* Jackson *v. Compass Grp. USA,*

6   *Inc.*, 2019 WL 3493991, at *6 (C.D. Cal. July 31, 2019).

7   Zamudio again objects to this calculation because it is not paired with assertions that cited case

8   law contains analogous facts.  (Doc. 4 at 7.)  In its Opposition, Caterpillar cites to jury verdicts in

9   analogous cases for support.  In *Hancock*, discussed above, the jury returned a verdict awarding

10  $2,077,638 in punitive damages.  2015 WL 4771468, at *1.  And in *Ko*, also discussed above, the jury

11  returned a verdict awarding $500,000 in punitive damages.  2014 WL 8108413, at *1.

12  However, these cases serve only to establish that punitive damages awards are possible, rather

13  than "more likely than not."  *Conrad*, 994 F. Supp. at 1201.  Caterpillar does not provide sufficient

14  factual justification to demonstrate it is likely a jury would take the rare step of awarding punitive

15  damages.  Therefore, the Court finds that Caterpillar has not met its burden in establishing that any

16  punitive damages award is appropriate for consideration in calculating the amount in controversy.

17              5.   Attorney's Fees

18  The Ninth Circuit held "where an underlying statute authorizes an award of attorneys' fees . . .

19  such fees may be included in the amount in controversy."  *Galt G/S v. JSS Scandinavia*, 142 F.3d

20  1150, 1156 (9th Cir. 1998).  The Court also made clear the fee calculation includes those already

21  incurred as well as prospective fees yet to be incurred.  *See, e.g.*, *Fritsch v. Swift Transp. Co. of Ariz.,*

22  *LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("[A] court must include future attorneys' fees recoverable by

23  statute or contract when assessing whether the amount-in-controversy requirement is met."); *Arias*,

24  936 F.3d at 927–28.  The removing party retains the burden of proving the amount of future attorney's

25  fees by a preponderance of the evidence.  *Arias*, 936 F.3d at 927–28.

26  Zamudio seeks an award of attorney's fees under Cal. Gov't Code § 12965(b), which permits

27  such an award to a prevailing party.  (Doc. 1-1 at 12.)  In the Notice of Removal, Caterpillar estimates a

28  potential attorney's fees award to be $30,000.  (Doc. 1 at 8–9.)  It derives this figure by pointing to

authority stating that $300 is a reasonable hourly rate for attorneys working on employment cases, and that total hours for an employment case litigated through trial may range from 100 to 300 hours. (*Id.*) *See Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015).

Caterpillar has met its burden in proving that $30,000 in potential attorney's fees should be considered in calculating the amount in controversy. The Court disagrees with Zamudio's contention that Caterpillar's evidence is purely speculative and should be disregarded because Caterpillar has provided "plausible allegations" as to a reasonable fee calculation based on the potential fee award under Cat. Gov't Code § 12965(b). *Academy of Country Music*, 991 F.3d at 1069. (*See* Doc. 12 at 3.)

### 6.   Summary of Calculation of Amount in Controversy

As described above, Caterpillar has presented evidence demonstrating the calculation of the amount in controversy should include: (1) potential recovery of back wages of $63,720; (2) potential recovery of future wages of $30,680; (3) potential pain and suffering and/or emotional distress damages of $25,000; and (4) potential attorney's fees of $30,000. Therefore, the amount in controversy exceeds the $75,000 threshold.

## III.   Conclusion and Order

For the reasons set forth above, the Court finds it has diversity jurisdiction over the matter. Accordingly, the Court **ORDERS**:  Plaintiff's motion to remand the case to Superior Court of California, County of Kern (Doc. 4) is **DENIED**.

IT IS SO ORDERED.

Dated:   **February 14, 2022**

UNITED STATES DISTRICT JUDGE