UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA VEGA ZAMUDIO, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>AEROTEK, INC., a Maryland Corporation; CATERPILLAR INC., a Delaware Corporation; and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No.: 1:21-cv-01673-JLT-CBD<br><br>ORDER DENYING MOTION TO COMPEL ARBITRATION<br><br>(Doc. 16) |

Before the Court is Defendant Aerotek, Inc.'s motion to compel arbitration, in which defendant Caterpillar, Inc. joins. (Docs. 16, 32.) For the reasons explained below, the court **DENIES** the motion.

I.     **BACKGROUND**

Aerotek is a temporary staffing company incorporated in Maryland. (Doc. 16-1 at ¶ 3.) Caterpillar is one of Aerotek's clients. (*Id.*) Aerotek hired Plaintiff on or about July 10, 2019, as a full-time warehouse employee and placed her with Caterpillar. (Doc. 1 at 5.) Plaintiff alleges that she was terminated under false pretenses after sustaining an injury at work and that Defendants' conduct amounts to 1) disability discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), 2) failure to provide reasonable accommodation in violation of FEHA, 3) failure to engage in the interactive process in violation of FEHA, 4) retaliation in violation of FEHA, and 5) wrongful termination in violation of public policy. (*Id*. at 7.)

1

Plaintiff alleges that she sustained a "severe back injury while handling a very heavy pallet" on October 16, 2019. (Doc. 1 at 5.) Plaintiff states that she immediately notified her direct supervisor regarding her injury and was instructed to continue working, however, Plaintiff's pain continued to increase. (*Id.*) Plaintiff informed her direct supervisor that she could not continue work. (*Id.*) Her supervisor responded by giving her an ice-pack and telling her to sit down for the remainder of her shift. (*Id.*)

Plaintiff reported to work the next day and complained once more about her pain, this time to her direct supervisor and another supervisor. (Doc. 1 at 6.) Plaintiff then spoke to the company nurse over the phone, who instructed her to apply ice packs to the injury and take pain medication. (*Id.*) On October 18, 2019, a day after her injury, Aerotek's recruiter contacted Plaintiff to inquire if she wanted to see a doctor, and Plaintiff agreed that she did. (*Id.*) Despite this, Plaintiff claims her doctor visit was delayed because Defendants (it is unclear which of the two) had not yet approved her clinical visit. (*Id.*) Plaintiff missed three days of work (October 20-22, 2019) due to her pain and was finally able to see a doctor on October 22, 2019. (*Id.*) The doctor diagnosed Plaintiff with lumbar strain and gave her restrictions, including not carrying over 10 pounds. (*Id.* at 2-3.) Plaintiff alleges that Aerotek's recruiter called her 10-15 minutes after her medical appointment and said "we got the results. You have a lot of restrictions. Caterpillar and Aerotek have decided to terminate you because of unexcused absences." (*Id.* at 7.)

Almost exactly two years later, on October 15, 2021, Plaintiff filed a complaint for 1) disability discrimination, 2) failure to provide reasonable accommodation, 3) failure to engage in the interactive process, 4) retaliation, and 5) wrongful termination in Kern County Superior Court, Case No. BCV-21-102423. (*See* Doc. 1.) Aerotek removed the case and then moved to compel arbitration of these claims on November 18, 2021, stating that "[b]efore Plaintiff began her employment with Aerotek, she electronically signed an Arbitration Agreement." (Doc. 16 at 17.) However, Plaintiff disputes the validity of her alleged signature and states that "Defendant has not produced evidence that the electronic signature could have only been an act of Plaintiff." (Doc. 18 at 9.)

///

///

2

## II. LEGAL STANDARDS

### A. General Standards Applicable to A Motion to Compel Arbitration

The Federal Arbitration Act applies to arbitration agreements in any contract affecting interstate commerce and "governs the allocation of authority between courts and arbitrators." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008); 9 U.S.C. § 2. The FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision "create[s] a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). A party seeking to enforce an arbitration agreement may petition the Court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

To determine whether to grant a motion to compel, the Court must consider two "gateway" questions: (1) "whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (2015). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Thus, a court shall stay or dismiss an action to allow arbitration proceedings to occur. *See* 9 U.S.C. §§ 3, 4; *see also Delgadillo v. James McKaone Enters. Inc.*, 2012 WL 4027019, at *3 (E.D. Cal. Sept. 12, 2012) ("[O]nce a court determines that an arbitration clause is enforceable, it has the discretion to either stay the case pending arbitration, or to dismiss the case if all of the alleged claims are subject to arbitration."). Because the FAA "is phrased in mandatory terms," "the standard for demonstrating arbitrability is not a high one, [and] a district court has little discretion to deny an arbitration motion." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

Because arbitration is a creation of contract, a court may compel arbitration only when there is a "clear agreement" to arbitrate between the parties. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092-93 (9th Cir. 2014) (citations omitted). "When determining whether a valid contract to arbitrate exists, we apply ordinary state law principles that govern contract formation." *Id.* at 1093 (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002)).

3

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24-25. As a result, arbitration should only be denied when "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). It is well-established that "arbitration provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1011 (9th Cir. 2004). However, the presumption in favor of arbitration applies only when determining the scope of arbitrable *issues* but not which *parties* agreed to arbitrate. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995) (holding the presumption for arbitration "reverses" when determining whether certain parties are subject to arbitration in cases of "silence or ambiguity"). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Kaplan*, 514 U.S. at 939.

The moving party bears the burden of demonstrating the existence of an arbitration agreement. *Prostek v. Lincare Inc.*, No. 1:22-CV-1530 AWI BAM, 2023 WL 2588098, at *3 (E.D. Cal. Mar. 21, 2023). A defendant may meet its "initial burden to show an agreement to arbitrate" merely "by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature" to the motion to compel arbitration. *Espejo v. S. Cal. Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (2016). If a plaintiff "challenge[s] the validity of that signature," a defendant is "then required to establish by a preponderance of the evidence that the signature [is] authentic." *Id*.

B.  Signature Authentication

California has enacted the Uniform Electronic Transaction Act, effective January 1, 2000, which recognizes the validity of electronic signatures. Cal. Civ. Code § 1633.1 *et seq*. The Act provides that a "signature may not be denied legal effect or enforceability solely because it is in electronic form." Cal. Civ. Code § 1633.7. Further, "[a]n electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Cal. Civ. Code. § 1633.9. An

4

electronic signature can be evidenced through an "act" of the person, which may include "a showing of the efficacy of any security procedure" used to verify the identity of the signator. Cal. Civ. Code. § 1633.9. Both California state and federal courts have addressed the use of a password in this context of a person's "act" related to an electronic signature.

Courts have found that evidence of use of a unique, secure username and password may sufficiently authenticate a signature when that signature is a typed name inputted by the user. *See, e.g., Espejo*, 246 Cal. App. 4th at 1062. Similarly, the use of a checkbox to show acknowledgment and agreement with a specific policy document has also been found sufficient where a unique, secure username and password was used to access the website containing the policy document. *See, e.g., Tanis v. Sw. Airlines, Co., et al*, No. 18-CV-2333-BAS-BGS, 2019 WL 1111240, at *5-7 (S.D. Cal. March 11, 2019). Likewise, the act of inputting a username and password, itself, has been found sufficient to constitute an electronic signature. *See, e.g., Hose v. Wash. Inventory Servs., Inc.*, No. 14-CV-2869-WQH-WVG, 2016 WL 6427810, at *6-7 (S.D. Cal. August 30, 2016); *Taft v. Henley Enters., Inc.*, No. SACV 15-1658-JLS (JCGx), 2016 WL 9448485, at *1-4 (C.D. Cal. March 2, 2016).

In all these cases, authentication of the electronic signatures turned on the reliability demonstrated in the processes associated with use of the username and password. These processes, and attendant explanations, are fact-specific and contextual; they may take many forms yet still satisfy the burden of authentication. Some "courts have found the declaration of [ ] human resource employees sufficient to authenticate electronic signatures," *Tagliabue v. J.C. Penney Corp., Inc.*, No. 1:15-CV-01443-SAB, 2015 WL 8780577, at *2 (E.D. Cal. Dec. 15, 2015), but it is the *content* of such declarations, rather than their mere existence, that is determinative for clearing the authentication threshold.

### III.   DISCUSSION

Aerotek seeks to compel arbitration based on the allegation that Plaintiff signed an arbitration agreement as part of her onboarding process. (Doc. 16 at 17.) Defendant attached the signed arbitration agreement to its motion to compel arbitration, thereby meeting its burden of proving the existence of an arbitration agreement. (Doc. 16-1 at 10-11.) However, Plaintiff disputes having signed any arbitration agreement as part of her onboarding process. (Doc. 18 at 8-9.) Because Plaintiff

disputes the validity of her purported signature on the arbitration agreement, Defendant now bears the burden of proving, by a preponderance of the evidence, that Plaintiff did sign the agreement.

To support the validity of Plaintiff's purported electronic signature on the arbitration agreement, Aerotek submitted the Declaration of Horacio Ramirez detailing Aerotek's typical onboarding process. (Doc. 16-1.) Mr. Ramirez is an Employee Relations Manager with Aerotek. (*Id*. at ¶ 2.)

Aerotek uses a software system called "Onboarding Automation" to process pre-employment forms. (Doc. 16-1 at ¶ 5.) To fill out the requisite paperwork, a future employee must create an account with Onboarding Automation, create a unique username and password, and complete the new hire paperwork. (*Id*.) This task can be completed at home or at an Aerotek location. (*Id*.) Future employees are asked for their first, middle, and last name, social security number, date of birth, gender, race, veteran status, home address, home and cell phone numbers, email address, marital status, emergency contract information, driver's license number, and tax withholding information. (*Id*.)

Defendant states that Plaintiff began the onboarding process on July 3, 2019, by making an account with Onboarding Automation. (Doc. 16-1 at ¶ 10.) The first document that Defendant claims Plaintiff signed is an electronic disclosure containing the following language:

> By using this website, I agree to use an electronic signature in lieu of a hand-written signature. By electronically signing any documentation contained herein, I agree to all the terms, conditions, and policies contained in these documents and agree to be bound as though I had signed these documents in writing. I further agree not to electronically sign any form without first reading it and ensuring I have completed the form to the best of my knowledge.
> If you do not agree with the statements set forth above, please do not click the Electronically Sign button below and call or email your point of contact. However, please understand that failure to successfully complete the required documentation within a timely manner could result in withdrawal of the job offer.

(Doc. 16-1 at 8.) Defendant claims that Plaintiff signed the electronic disclosure on July 3, 2019 at 3:59 a.m. and proceeded to sign the remaining onboarding forms, including the arbitration agreement. (Doc. 16-1 at ¶ 10.)

Courts have compelled arbitration where the declarations provided specific information on how a plaintiff signed an arbitration agreement and how defendant can ascertain that the signature was

an act of plaintiff's. In *Tagliabue v. J.C. Penney Corp., Inc.*, the court found that declarations from two senior human resource managers, one which attested that that plaintiff had signed the agreement and another which detailed "20 discrete steps that a new hire has to follow and complete" were sufficient to authenticate plaintiff's signature. 2015 WL 8780577 at *2. Similarly, in *Espejo v. S. Cal. Permanente Med. Grp.*, the court found that defendant had authenticated plaintiff's signature by detailing defendant's "security precautions regarding transmission and use of an applicant's unique user name and password, as well as the steps an applicant would have to take place his or her name on the signature line of the employment agreement." 246 Cal. App. 4th 1047at 1062. Importantly, the defendant in *Espejo* not only provided evidence describing the security measures, but also detailed the date, time and IP address at which the documents were executed. *Id*.

Courts have refused to compel arbitration where the declarations submitted "summarily assert[]" that the plaintiff signed the arbitration agreement. *See Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836 (2014). In *Ruiz*, the court found that defendant's assertions that it presents "all persons who seek or seek to maintain employment" with the arbitration agreement and that "[e]ach employee is required to log into the HR system—each with his or her unique login ID and password—to review and electronically execute" the arbitration agreement were insufficient to authenticate the signature as an act of plaintiff's. *Id*. at 839-41. The court in *Ruiz* reasoned that although signature authentication was not a high burden, defendant had nevertheless failed to meet it because they failed to explain how the "printed electronic signature, or the date and time printed next to the signature, came to be placed on the [] agreement." *Id*. at 839.

Similarly, the court in *Smith v. Rent-A-Ctr., Inc.*, No. 118CV01351LJOJLT, 2019 WL 1294443 (E.D. Cal. Mar. 21, 2019) also found that defendant failed to meet its burden and authenticate plaintiff's signature. In *Smith*, the court explained that Defendant lacked the necessary information to authenticate the agreement:

> [] Tuckey summarily asserts that "the [Electronic Signature and Acknowledgment Agreement] process involves the employee creating a unique and secret password, which serves as the employee's 'electronic signature'. [Plaintiff] signed the Electronic Signature and Acknowledgement Agreement by entering his unique and secret password" on October 4, 2016. ECF No. 17-2 ¶ 4.
> Nowhere in this statement does Tuckey explain how he inferred that it was Plaintiff who created and entered the password, how he ascertained that the electronic

7

> signature was the act of Plaintiff, or how he determined that the form was signed on October 4, 2016. No steps are detailed; no audit trail discussed. It is, in fact, entirely unclear at what point Defendant entered his password in order to sign the agreement, and whether creating his password and later signing the arbitration agreement were two of several steps in his onboarding or the only onboarding steps he was asked to complete. There is no discussion of timestamps or IP addresses. There is also no mention of Plaintiff's username.
> 
> The assertion from Tuckey is deficient; it states a conclusion without providing any steps to illuminate how Defendant arrived at that conclusion. Tuckey's assertion is the only substance offered to authenticate the Electronic Signature Agreement that formed the basis for Plaintiff's signature on the onboarding arbitration agreement. Because of the critical gap in evidence supporting the Electronic Signature Acknowledgement and Agreement, the Court finds that it is not sufficiently authenticated. That is, Defendant has not demonstrated by a preponderance of the evidence that the electronic signature was Plaintiff's act.

*Smith*, 2019 WL 1294443 at *6.

Mr. Ramirez's declaration parallels Tuckey's declaration in *Smith*. Mr. Ramirez does not specifically discuss Plaintiff's onboarding process. He states that he has "reviewed Plaintiff's personnel files obtained through Onboarding Automation, which includes documents that Plaintiff electronically executed. Based on my review of Plaintiff's personnel files, she provided very detailed biographical information" (Doc. 16-1 at ¶ 7) and that "[o]n July 3, 2019, Plaintiff completed her onboarding documents." (*Id*. at ¶ 8.) None of this reveals the basis of Mr. Ramirez's conclusions.

Based on these statements, the Court cannot tell what information Plaintiff provided or if it is sufficient to establish that Plaintiff signed the arbitration agreement. Like the declarations in *Smith*, Mr. Ramirez's declaration is deficient because it does not provide enough detail about the steps that Plaintiff took to create her account with Onboarding Automation, or to sign the arbitration agreement. Mr. Ramirez does not discuss why he is certain that it was Plaintiff that signed the documents and states only that she "provided very detailed biographical information" (Doc. 16-1 at ¶ 7) and that "Plaintiff completed the Onboarding Automation process." (*Id*. at ¶ 10.) Like in *Smith*, Defendant does not mention Plaintiff's username, if her password had to be reset to first access the account, or if her account information is private, nor does Defendant discuss IP addresses. Defendant has not elaborated on any security measure for protecting passwords, or for transmitting and storing information such as passwords and forms. Crucially, Defendant's evidence does not foreclose the possibility that other individuals could have accessed Plaintiff's personnel files and/or signed the agreement. In sum, Defendant's evidence lacks the necessary detail to authenticate the signature on the arbitration

8

agreement as Plaintiff's. Defendant does not provide the level of information the defendants in *Tagliabue* or *Espejo* provided. Mr. Ramirez's declaration is more akin to the declarations in *Ruiz* and *Smith*. For these reasons, the Court finds that Defendant has failed to authenticate the electronic signature as an act of Plaintiff's by a preponderance of the evidence.

The Court acknowledges that the facts that Defendant collected some of Plaintiff's personal information during the onboarding process and that Plaintiff began her employment not long thereafter tend to support Defendant's position, however Defendant has failed to provide *enough* detail to convince the Court that is the signature on the arbitration agreement could *only* be attributed to Plaintiff. Because the Court has not found that there is a valid arbitration agreement, it need not address whether the arbitration agreement encompasses Plaintiff's complaint or if Defendant Caterpillar is a party to the arbitration agreement.

For the foregoing reasons, Defendant's motion to compel arbitration is **DENIED without prejudice.**

IT IS SO ORDERED.

Dated: __October 12, 2023__                             /s/ Jennifer L. Thurston
                                                         UNITED STATES DISTRICT JUDGE