1
2
3
4
5                        UNITED STATES DISTRICT COURT
6                        EASTERN DISTRICT OF CALIFORNIA
7

8    DIANA VEGA ZAMUDIO,                    Case No. 1:21-cv-01673-JLT-CDB
9                    Plaintiff,             ORDER GRANTING MOTION OF
                                            DEFENDANT AEROTEK, INC., TO COMPEL
10            v.                            ARBITRATION
11   AEROTEK, INC., et al.,                 (Doc. 41)
12                   Defendants.
13
14

15   **I.     Background**

16          Defendant Aerotek, Inc. ("Aerotek") is a temporary staffing company incorporated in

17   Maryland.  (Doc. 16-1 ¶3).  Defendant Caterpillar, Inc. ("Caterpillar") is one of Aerotek's clients.

18   *Id.*  Aerotek hired Plaintiff Diana Vega Zamudio on or around July 10, 2019, as a full-time

19   warehouse employee and placed her with Caterpillar.  (Doc. 1-1 p. 3).  Plaintiff alleges that she

20   was terminated from her employment under false pretenses after sustaining an injury at work and

21   raises claims against Defendants for (1) disability discrimination in violation of California's Fair

22   Employment and Housing Act ("FEHA"); (2) failure to provide reasonable accommodations in

23   violation of FEHA; (3) failure to engage in the interactive process in violation of FEHA; (4)

24   retaliation in violation of FEHA; and (5) wrongful termination in violation of public policy.  *Id.* at

25   1.  Plaintiff commenced the action with the filing of a complaint on October 15, 2021, in Kern

26   County Superior Court.  (Doc. 1).  Aerotek removed the action to this Court and moved to compel

27   arbitration of Plaintiff's claims before the Judicial Arbitration and Mediation Services ("JAMS").

28   (Docs. 1, 16).

1   On October 13, 2023, the Court denied without prejudice Aerotek's first motion to compel

2   arbitration.  (Doc. 34).  The Court found that Aerotek failed to provide enough details

3   demonstrating that the signature on the arbitration agreement could only be attributed to Plaintiff.

4   *Id*. at 9.  Accordingly, since the Court did not find that there is a valid arbitration agreement, it did

5   not address whether Plaintiff's claims were subject to that agreement or whether Caterpillar is a

6   party to the agreement.  *Id*.

7   On November 17, 2023 – approximately one month following the Court's denial –

8   Aerotek filed its now-pending, renewed motion to compel arbitration, which is joined by

9   Caterpillar.  (Docs. 41, 45).  Plaintiff filed an opposition on December 1, 2023 (Doc. 42) and

10  Aerotek filed a reply on December 11, 2023 (Doc. 44).  The parties have consented to the

11  jurisdiction of a magistrate judge for the limited purpose of resolving Aerotek's renewed motion

12  to compel arbitration.  (Doc. 56).  For the reasons set forth below, Aerotek's motion to compel

13  arbitration is granted.

14  **II.      Standard of Law**

15  The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract

16  affecting interstate commerce and "governs the allocation of authority between courts and

17  arbitrators."  *Cox v. Ocean View Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008); 9 U.S.C. § 2.  The

18  FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable,

19  save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C.

20  § 2.  This provision "create[s] a body of federal substantive law of arbitrability applicable to any

21  arbitration agreement within the coverage of the Act."  *Moses H. Cone Mem'l Hosp. v. Mercury*

22  *Constr. Corp.*, 460 U.S. 1, 24 (1983).  A party seeking to enforce an arbitration agreement may

23  petition the Court for "an order directing the parties to proceed to arbitration in accordance with

24  the terms of the agreement." 9 U.S.C. § 4.

25  To determine whether it should grant a motion to compel arbitration, the Court must

26  consider two "gateway" questions: (1) "whether there is an agreement to arbitrate between the

27  parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d

28  1125, 1130 (9th Cir. 2015).  "If the response is affirmative on both counts, then the [FAA]

2

1    requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron*

2    *Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  Under such circumstances,

3    a court stays or dismisses an action to allow arbitration proceedings to occur.  *See* 9 U.S.C. §§

4    3,4, *see also Delgadillo v. James McKaone Enters. Inc.*, No. 1:12-CV-1149 AWI MJS, 2012 WL

5    4027019, at *3 (E.D. Cal. Sept. 12, 2012) ("[O]nce a court determines that an arbitration clause is

6    enforceable, it has the discretion to either stay the case pending arbitration or to dismiss the case

7    if all of the alleged claims are subject to arbitration.").  Because the FAA "is phrased in

8    mandatory terms," "the standard for demonstrating arbitrability is not a high one, [and] a district

9    court has little discretion to deny an arbitration motion."  *Republic of Nicaragua v. Standard Fruit*

10   *Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

11          Since arbitration is a creation of contract, a court may compel arbitration only when there

12   is a "clear agreement" to arbitrate between the parties.  *Davis v. Nordstrom, Inc.*, 755 F.3d 1089,

13   1092-93 (9th Cir. 2014) (citations omitted).  "When determining whether a valid contract to

14   arbitrate exists, [courts] apply ordinary state law principles that govern contract formation." *Id.* at

15   1093 (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 78, 782 (9th Cir. 2002)).

16          "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of

17   arbitration." *Moses*, 460 U.S. at 24-25.  *See Epic Sys. Corp v. Lewis*, 138 S. Ct. 1612, 1621

18   (2018) (the FAA establishes "a liberal federal policy favoring arbitration agreements") (quotation

19   and citation omitted); *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008)

20   (Congress enacted the FAA "to replace judicial indisposition to arbitration").  As a result,

21   arbitration should only be denied when "it may be said with positive assurance that the arbitration

22   clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v.*

23   *Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  It is well-established that "arbitration

24   provides a forum for resolving disputes more expeditiously and with greater flexibility than

25   litigation." *Lifescan, Inc., v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1011 (9th Cir. 2004).

26   However, the presumption in favor of arbitration applies only when determining the scope of

27   arbitrable *issues* but not which *parties* agreed to arbitrate.  *See Kramer v. Toyota Motor Corp.*,

28   705 F.3d 1122, 1127 (9th Cir. 2013); *see also First Options of Chicago, Inc v. Kaplan*, 514 U.S.

3

938, 944-45 (1995) (holding the presumption for arbitration "reversing" when determining whether certain parties are subject to arbitration in cases of "silence or ambiguity").  "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so." *Kaplan*, 514 U.S. at 939 (internal quotation and citation omitted).

The moving party bears the burden of demonstrating the existence of an arbitration agreement.  *Prostek v. Lincare Inc.*, 662 F. Supp. 3d 1100, 1110 (E.D. Cal. 2023).  A defendant may meet its "initial burden to show an agreement to arbitrate" merely "by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature" to the motion to compel arbitration.  *Espejo v. S. Cal. Permanente Med. Grp.*, 245 Cal. App. 4th 1047, 1060 (2016).  However, if a plaintiff "challenge[s] the validity of that signature," a defendant is "then required to establish by a preponderance of the evidence that the signature [is] authentic." *Id*.

**III.     Discussion**

Plaintiff does not challenge Aerotek's argument (Doc. 41 p. 15) that Plaintiff's claims would be subject to arbitration assuming the Court finds the parties entered into an enforceable arbitration agreement.  *See generally* (Doc. 42).  The Court has reviewed the arbitration agreement (Doc. 41-1 pp. 76-78 "Exhibit Z") and finds it contains no clear and unmistakable language requiring that the arbitrability of a claim be left to an arbitrator.  *See Brennan*, 796 F.3d at 1130.  Given the broad scope of the arbitration agreement's coverage over harassment and retaliation claims, the Court has no difficulty concluding that Plaintiff's claims fall within the agreement.

Instead, Plaintiff disputes that she signed an arbitration agreement and argues that the arbitration agreement Aerotek claims she signed is unconscionable.[1]

---

[1] The Court has considered Plaintiff's arguments that Aerotek's renewed motion should be held to the heightened standard of a motion for reconsideration.  (Doc. 42 pp. 5-8).  Given that the Court expressly denied Aerotek's earlier motion to compel arbitration "without prejudice" (an unnecessary caveat unless the Court was open to a renewed motion) and in light of the additional facts discussed herein, this Court will not analyze Aerotek's motion under a motion for reconsideration standard.  *See Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010) (holding that a district court does not abuse its discretion when it allows a successive motion for summary judgment that is supported by an expanded factual record).

### A.  Signature Authentication

#### 1.        Governing Law

California has enacted the Uniform Electronic Transaction Act, which recognizes the validity of electronic signatures.  Cal. Civ. Code § 1633.1 *et seq*.  The Act provides that a "signature may not be denied legal effect or enforceability solely because it is in electronic form."  Cal. Civ. Code § 1633.7.  In addition, "[a]n electronic record or electronic signature is attributable to a person if it was the act of the person.  The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable."  Cal. Civ. Code § 1633.9.

Courts have found that evidence of a unique, secure username and password may sufficiently authenticate a signature when that signature is a typed name input by the user.  *See, e.g., Espejo*, 246 Cal. App. 4th at 1062; *Hose v. Wash. Inventory Servs., Inc.*, No. 14cv2869-WQH-WVG, 2016 WL 6427810, at *6-7 (S.D. Cal. Aug. 30, 2016); *Taft v. Hensley Enters., Inc.*, No. SACV 15-1658-JLS (JCGx), 2016 WL 9448485, at *1-4 (C.D. Cal. Mar. 2, 2016).  Likewise, courts have found the use of a checkbox to show acknowledgment and agreement with a specific policy document to constitute sufficient evidence where a secure, unique username and password was used to access the website containing the policy document.  *See, e.g., Tanis v. Sw. Airlines, Co., et al.*, No. 18-CV-2333-BAS-BGS, 2016 WL 1111240, at *5-7 (S.D. Cal. Mar. 11, 2019).

The authentication of electronic signatures turns on the reliability demonstrated in the processes associated with the signor's username and password.  *Zamudio v. Aerotek, Inc.*, No. 1:21-cv-01673-JLT-CDB, 2023 WL 6796470, at *3 (E.D. Cal. Oct. 13, 2023).  These authenticating processes and underlying explanations are fact-specific and contextual and the burden of authentication may be met through methods including the submission of declarations by human resource employees.  *Tagliabue v. J.C. Penney Corp., Inc.*, No. 1:15-CV-01443-SAB, 2015 WL 8780577, at *2 (E.D. Cal. Dec. 15, 2015).  However, declarations that summarily assert that the plaintiff signed the arbitration agreement are insufficient to authenticate the signature as an act of plaintiff.  *Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 839-41 (2014).

/ / /

1          **2.      Analysis**

2          The Court previously denied Aerotek's motion to compel arbitration without prejudice for

3    Aerotek's failure to demonstrate that the signature in the arbitration agreement could only be

4    attributable to Plaintiff. *Zamudio*, 2023 WL 6796470, at *5.  The Court identified several

5    deficiencies in the declaration of Horatio Ramirez, which was submitted in support of Aerotek's

6    first motion to compel arbitration.  *Id*. at *4 (citing Doc. 16-1).  The Court found:

7              Mr. Ramirez's declaration is deficient because it does not provide enough
             detail about the steps that Plaintiff took to create her account with
8             Onboard Automation, or to sign the arbitration agreement.  Mr. Ramirez
             does not discuss why he is certain that it was Plaintiff that signed the
9             documents and states only that she "provided very detailed biographical
             information" … and that "Plaintiff completed the Onboarding
10            Automation process." … [Aerotek] does not mention Plaintiff's
             username, if her password had to be reset to first access the account, or if
11            her account information is private, nor does Defendant discuss IP
             addresses.  Defendant has not elaborated on any security measure for
12            protecting passwords, or for transmitting and storing information such as
             passwords and forms. Crucially, Defendant's evidence does not foreclose
13            the possibility that other individuals could have accessed Plaintiff's
             personnel files and/or signed the agreement.
14

15   *Zamudio*, 2023 WL 6796470, at *5.  In its renewed motion, Aerotek contends that it has

16   submitted evidence demonstrating that the electronic signature on the arbitration agreement is an

17   act attributable to Plaintiff.  (Doc. 41).  Aerotek's renewed motion is accompanied by a

18   declaration of Lindsey Collum.  (Doc. 41-1 pp. 2-8 or "Collum Decl.").[2]

19         Ms. Collum is employed by Allegis Group, Inc., and has provided services to its affiliated

20   companies, including Aerotek, since 2019.  Collum Decl. ⁋2.  Specifically, Ms. Collum manages

21   the office technology products used for contract employees, including the onboarding program

22   used for Plaintiff.

23         Aerotek has used a software system known as "Onboarding Automation" as its initial

24   onboarding tool for pre-employment paperwork since in or around November 2015.  *Id*. ⁋3.

25   Onboarding Automation is a web-based tool that delivers new-hire onboarding forms

26   electronically to individuals hired for assignment.  *Id*.  Before an individual may complete the

27   _____
          [2] Doc. 41-1 is comprised of the Collum Declaration and various other exhibits with their
28   own pagination. The Court uses herein the pagination provided by CM/ECF when referring to a
     specific page within Doc. 41-1.

employment hiring process, he or she must first register with Onboarding Automation, create a username and confidential password, and complete the new-hire paperwork online.  This process is accomplished through a web-secure link sent to the employee's personal email address.  *Id*. ¶4.  Once an employee creates an account with Onboarding Automation using her unique username and password, only that individual can access or change documents within the account prior to submitting onboarding documents.  *Id*. ¶¶4, 8.

Once an employee signs the onboarding forms, the employee electronically submits them for review.  Upon submission of the forms, the employee signature lines are locked, and no one can edit the employee's designated signature line.  *Id*. ¶8.  After an employee submits the completed form, an Aerotek representative will review the employee's submission and engage in a "Verify Information" task, which generates the signature of the Aerotek representative once completed.  *Id*.

According to Ms. Collum, Plaintiff received an email from Aerotek on July 2, 2019, at 8:27 p.m.  *Id*. ¶12; (Doc. 41-1 pp. 12-15; Doc. 44-1 ¶4 and Exhibit II).  Plaintiff then proceeded to create a unique username and password and completed her onboarding documents on July 3, 2019.  Collum Decl. ¶¶12-14; *See* (Doc. 41-1 pp. 97-101 "Exhibit GG").

The Colum Declaration is accompanied by a spreadsheet ("Exhibit GG") containing all edits made to Plaintiff's submissions, along with the authors of the changes and the times that the edits were made.  Within Exhibit GG, the column entitled "Actn Name" reflects the referenced action that was made or the document that was signed and the column entitled "Updated By" reflects the user who updated that particular document.  Collum Decl. ¶16.  Ms. Collum attests that the arbitration agreement and all of Plaintiff's onboarding documents were edited by the username "dianaz14" and no one other than dianaz14 could make edits to the employee signature line.  Ms. Collum further attests that the columns on the far right of Exhibit GG depict inputs made by Aerotek representatives and do not reflect any change in the employee's signature lines, which could not be changed.  *Id*. ¶16 n.1.

In opposition to Defendant's motion to compel arbitration, Plaintiff filed a declaration in which she attests she does not recognize the name "Onboarding Automation" or recall having

accessed any website or program with that name.  (Doc. 42-1 "Zamudio Decl." ⁋6).  Instead, she recalls receiving a "welcome packet" from an Aerotek representative, which had information regarding timecards, payrolls, W-2s and drug testing.  *Id*. ⁋9.  According to Plaintiff, she never received an arbitration agreement through her meetings with the Aerotek representative, nor does she recall ever receiving an email concerning "Onboarding Automation" or any other emails asking her to create an account with "Onboarding Automation."  Plaintiff further asserts that she did not sign or in any way authorize her signature to be attached to the arbitration agreement.  *Id*. ⁋15.

Plaintiff further argues that Ms. Collum's declaration is contradicted by the actual information contained in Exhibit GG.  (Doc. 42 p. 16).  Plaintiff argues that four other individuals made entries in the "Updated By" and "Description_1" columns, which, she asserts, indicates that other individuals had access to and did access her files and documents.  In response, Ms. Collum attests that "only Plaintiff could access her onboarding documents prior to submitting them (and once she submitted them her signature lines were locked)."  Collum Decl. ⁋17.  Ms. Collum also submitted a supplemental declaration in reply further clarifying that users other than Plaintiff did access her onboarding documents but were only able to do so after Plaintiff signed the documents and could not alter her signature lines.  (Doc. 44-1 pp. 2-3).

The Court finds that Aerotek has met its burden of establishing by a preponderance of the evidence that Plaintiff signed the arbitration agreement.  The Collum Declaration demonstrates how Plaintiff initially generated her unique email and password through a welcome email (Doc. 41-1 pp. 12-13) and that no one aside from Plaintiff could see her password or access her account before Plaintiff submitted her onboarding documents.  Collum Decl. ⁋4.  In addition, the electronic signing form contains Plaintiff's name and the date that it was electronically signed.  *Id*. ⁋5.  Importantly, the Collum Declaration is responsive to the concerns that the Court raised in its earlier order denying Aerotek's original motion to compel that other individuals could have accessed Plaintiff's personnel files or signed the agreement.  Although other individuals did access Plaintiff's personnel files as reflected in Exhibit GG, they did so only after Plaintiff completed her application form and in no event could they alter Plaintiff's signature.  (Collum

1    Decl. ¶¶ 16-17).

2          While the Court acknowledges that Aerotek has not proffered every conceivable type of

3    information to buttress its showing that Plaintiff's signature is authentic (such as IP information),

4    it has met its burden by a preponderance of the evidence.  *See Romero v. Watkins and Shepard*

5    *Trucking, Inc.*, No. 20-55768, 2021 WL 3675074, at * (9th Cir. Aug. 19, 2021) (IP information

6    "not necessary" to meet burden of demonstrating that a contract to arbitrate was formed) (citing

7    *Espejo*, 246 Cal. App. 4th at 1053).  Coupled with other information this Court previously

8    acknowledged "tend[ed] to support" the conclusion that Plaintiff signed the arbitration agreement

9    (*Zamudio*, 2023 WL 6796470, at *5), including that other documents containing Plaintiff's

10   personal identifying information were uploaded at the same time the signed arbitration agreement

11   was uploaded, the Collum Declaration sufficiently establishes that the signatures on the forms

12   were an act of Plaintiff. *See Taft*, 2016 WL 9448485, at *4 ("it is notable that Taft appears to have

13   executed other onboarding documents before *and after* she signed the arbitration agreement");

14   *Espejo*, 246 Cal. App. 4th at 1062 (citing Cal. Civ. Code § 1633.9(a)).

15        **B.  Unconscionability**

16              **1.      Governing Law**

17          An arbitration agreement may be deemed invalid on grounds of unconscionability. *See*

18   *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021).  The party opposing arbitration

19   has the burden of establishing that an arbitration agreement is unconscionable.  *Id*.  State law

20   governs whether an agreement is invalid due to unconscionability.  *Shivkov v. Artex Risk Sols.,*

21   *Inc.*, 974 F.3d 1051, 1059 (9th Cir. 2020); *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058

22   (9th Cir. 2013).  In California, unconscionability has a procedural element and a substantive

23   element.  *See OTO, L.L.C v. Kho*, 8 Cal.5th 111, 126 (2019); *Lim*, 8 F.4th at 1000-01.  Procedural

24   unconscionability focuses on the circumstances of contract negotiation and formation, taking into

25   account whether there was oppression and surprise due to unequal bargaining power.  *OTO*, 8

26   Cal.5th at 125. Separately, substantive unconscionability "pertains to the fairness of the

27   agreement's actual terms and to assessments of whether the contract is overly harsh or one-

28   sided." *Id*. (quoting *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*,

9

55 Cal.4th 223, 246 (2012)); *Lim*, 8 F.4th at 1000-01.  While both procedural and substantive elements must be present to establish unconscionability, those elements do not need to be present in the same degree.  *Lim*, 8 F.4th at 1000; *OTO*, 8 Cal.5th at 125-26.  Instead, the Court assesses unconscionability using a "sliding scale" "such that the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Lim*, 8 F.4th 1000 (internal quotation and citations omitted).

### 2.    Analysis – Procedural Unconscionability

"The procedural unconscionability analysis begins by determining whether the agreement is a contract of adhesion, which is a standardized contract offered by the party with superior bargaining power on a take-it-or-leave-it-basis."  *Prostek*, 662 F. Supp. 3d at 1115 (citing *OTO*, 8 Cal.5th at 126 and *Beco v. Fast Auto Loans, Inc.*, 86 Cal. App. 5th 292, 307 (2022)).  If a contract of adhesion is at issue, courts must assess whether the circumstances of the contract's formation created such oppression or surprise that closer scrutiny of the contract's overall fairness is required.  *OTO*, 8 Cal.5th at 126; *Beco*, 86 Cal. App. 5th at 307.  Arbitration agreements imposed as a condition of employment typically are found to be adhesive. *OTO*, 8 Cal.5th at 126. However, "if an employee must sign a non-negotiable employment agreement as a condition of employment but 'there is no other indication of oppression or surprise,' then 'the agreement will be enforceable unless the degree of substantive unconscionability is high.'" *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017) (quoting *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013)).  In California, "the adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most."  *Id.* at 1261-62 (citing *Baltazar v. Forever 21, Inc.*, 62 Cal.4th 1237, 1245 (2016)).

Here, Plaintiff argues that the arbitration agreement at issue is adhesive and that there is procedural unconscionability due to the imbalance of power between herself and a global company like Defendant Caterpillar.  (Doc. 42 pp. 18-19).  However, Aerotek argues that Plaintiff was not required to sign the arbitration agreement, as she could have skipped that portion in the Onboarding Automation program and still be hired.  (Doc. 41-1 ¶5).  Plaintiff disputes this and

points to language in the arbitration agreement, which states: "As consideration for my application for and/or my employment with Aerotek Inc. and for the mutual promises herein, I and the company …agree…"  *See id.* Exhibit Z p. 76.  Plaintiff further contends that even if she could opt-out of the arbitration agreement, she would be bound to the arbitration provision regardless of whether she agreed to it. (Doc. 42 pp. 19-20).  Plaintiff's argument is supported by the arbitration agreement itself, which states:

> My affirmative signature and/or acknowledgement of this Agreement is not required for the Agreement to be enforced. If I begin working for Aerotek, Inc without signing this Agreement, this Agreement will be effective, and I will be deemed to have consented to, ratified and accepted this Agreement through my acceptance of and continued employment with Aerotek, Inc.

(Doc. 41-1, Exhibit Z p. 77).

While the arbitration agreement does not appear to expressly memorialize a prospective employee's right to opt-out, Plaintiff does not compellingly challenge Aerotek's representation that "The only document in Onboarding Automation that can be skipped without a signature is the Mutual Arbitration Agreement (for California candidates only)." (Doc. 41-1 ¶5).  Moreover, the Court does not agree with Plaintiff that she necessarily would be bound to arbitration without having signed the agreement merely because of general contract language purporting to bind a person even without a signature.  That is because, in the employment arbitration context, "[i]t is not the presence or absence of a signature [on an agreement] which is dispositive; it is the presence or absence of evidence of an agreement to arbitrate which matters."  *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 176 (2015), pet. for review denied (*quoting Banner Entertainment, Inc. v. Superior Court*, 62 Cal. App. 4th 348, 361 (1998)).

Because Plaintiff could have manifested her objection and intent to not be bound to the arbitration agreement by declining to sign it and because the Court does not agree that the arbitration provisions necessarily would apply even without an employee's signature, the Court concludes that this case presents a *de minimis* level of procedural unconscionability. *E.g., Alavez v. Brinker Restaurant Corp.*, No. EDCV 16-1450 JGB (SPx), 2016 WL 11746260, at *6 (C.D. Cal. Sept. 23, 2016) (finding a compulsory pre-dispute arbitration agreement presented a low

1    degree of procedural unconscionability); *Serpa*, 215 Cal. App. 4th at 704 ("When, as here, there

2    is no other indication of oppression or surprise, the degree of procedural unconscionability of an

3    adhesion agreement is low, and the agreement will be enforceable unless the degree of

4    substantive unconscionability is high.").

5                      **3.      Analysis – Substantive Unconscionability**

6          Substantive unconscionability implicates the fairness of a contract's terms and requires

7    consideration of whether the terms are unreasonably favorable to the more powerful party.  *Lim*, 8

8    F.4th at 1001-02; *OTO*, 8 Cal.5th at 129.  "Unconscionable terms impair the integrity of the

9    bargaining process or otherwise contravene the public interest or a public policy or attempt to

10   impermissibly alter fundamental legal duties.  They may include fine-print terms, unreasonably or

11   unexpectedly harsh terms regarding price or other central aspects of the transaction, and terms

12   that undermine the nondrafting party's reasonable expectations."  *OTO*, 8 Cal.5th at 130 (internal

13   quotations and citations omitted).

14         Plaintiff argues that the arbitration agreement at issue is substantively unconscionable

15   because it: (1) shifts costs unique to arbitration onto Plaintiff; (2) does not provide for adequate

16   discovery; and (3) mandates the use of JAMS rendering Defendant a "repeat player." (Doc. 42 pp.

17   22-24).  The Court addresses below each of these claims of substantive unconscionability.

18         First, when arbitration is a condition of employment, an employer "cannot generally

19   require the employee to bear any *type* of expense that the employee would not be required to bear

20   if he or she were free to bring the action in court."  *Armendariz v. Foundation Health Psychcare*

21   *Servs., Inc*., 24 Cal.4th 83, 110 (2000) (emphasis in original).  In California, as a general rule,

22   "[p]arties may validly agree that the prevailing party will be awarded attorney fees incurred in

23   any litigation between themselves, whether such litigation sounds in tort or in contract."  *Santisas*

24   *v. Goodin*, 17 Cal.4th 599, 608 (1998).  However, a scheme that makes each party bear half of the

25   costs of the arbitration "alone would render an arbitration agreement unenforceable."  *Circuit City*

26   *Stores, Inc. v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002).

27         Here, the arbitration agreement provides in relevant part:

28

1
2
3

> I will pay any JAMS filing or administrative fee up to the amount of the initial filing fee to commence an action in a Court that otherwise would have jurisdiction ("filing fee"), and the Company will pay any amount in excess of the filing fee.

4
5

> The Company will pay any other JAMS administrative fees, the Arbitrator's fees, and any additional fees unique to arbitration.
> I will pay my own attorneys' fees and all other costs and fees that I incur in connection with the Arbitration.

6
7
8
9
10

> The Company will pay its own attorneys' fees and all other costs and fees that it incurs in connection with the Arbitration.
> The Arbitrator will not have authority to award attorneys' fees unless a statute or contract at issue in the dispute authorizes the award of attorneys' fees to the applicable prevailing party, in which case the Arbitrator shall have the authority to make an award of attorneys' fees to the full extent permitted by applicable law. If there is a dispute as to whether the Company or I am the prevailing party, the Arbitrator will decide this issue.

11   (Doc. 41-1 Exhibit Z pp. 1-2).

12         Considering the terms of the agreement, Plaintiff's reliance on *Trivedi* (Doc. 42 p. 22) is

13   misguided since the contract at issue in *Trivedi* included a mandatory attorneys' fees provision in

14   favor of the prevailing party as well as a "carve-out" provision allowing only the employer to

15   access the courts. *Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387, 393-94 (2010)

16   (disapproved of on other grounds by *Baltazar*, 62 Cal.4th at 1248). In this case, the arbitration

17   agreement does not allow for award for attorneys' fees unless otherwise authorized by the statute

18   at issue. The cost provision in the arbitration agreement is consistent with the California Supreme

19   Court's mandate in *Armendariz*, as it does not impose any expense beyond what a party would be

20   required to bear if she were free to bring the action in court. *Armendariz*, 24 Cal.4th at 110-11;

21   *see Itkoff v. ABC Phones of North Carolina, Inc.*, No. 8:17-cv-02043-JLS-JDE, 2018 WL

22   6242158, at *8 (C.D. Cal. Oct. 11, 2018) (finding no substantive unconscionability where

23   agreement forbid award of attorneys' fees unless otherwise authorized by law); *Solorio v. ABC*

24   *Phones of North Carolina, Inc.*, No. 1:20-cv-01051 NONE JLT, 2021 WL 363680, at *15 (E.D.

25   Cal. Feb. 3, 2021) (finding no substantive unconscionability where agreement gives arbitrator

26   "authority to make an award of attorney fees and costs to the same extent available under

27   applicable law" and where costs are to "be allocated and paid in accordance with then-applicable

28   law.").

1    Accordingly, the agreement's provision related to cost shifting does not render the

2  arbitration provisions substantively unconscionable.

3    Next, Plaintiff argues that she would be disadvantaged as the JAMS rules limit the parties

4  to one deposition per side. (Doc. 42 p. 23).  She argues that in the realm of employment litigation,

5  employees generally are required to take multiple depositions whereas employers need only take

6  a single deposition of the plaintiff.  In other words, Plaintiff argues that this discovery limitation

7  would have an asymmetrical effect on the parties, with her bearing the brunt of disadvantage.

8    In California, an arbitration agreement must provide for more than minimal discovery,

9  which means discovery that is adequate to litigate the claim at issue.  *See Armendariz*, 24 Cal.4th

10  at 102.  Most courts have found that the JAMS rules for arbitration provide for adequate

11  discovery.  *See Sanchez v. Homebridge Fin. Servs., Inc.*, No. 1:17-cv-1267 AWI EPG, 2018 WL

12  1392892, at *5 (E.D. Cal. Mar. 20, 2018) (citing cases).  This limitation on discovery is not

13  overly onerous since JAMS adopts a "reasonable need" standard for additional depositions, which

14  does not require a substantial showing.  *Id.* (citing *Affholter v. Franklin Cnty Water Dist.*, No

15  1:07-CV-0388 OWW DLB, 2008 WL 5388510, at *15 (E.D. Cal. Dec. 23, 2008) and *Dotson v.*

16  *Amgen, Inc*, 181 Cal. App. 4th 975, 983-84 (2010)).

17    Finally, Plaintiff argues that even if additional discovery is allowable, the Court should

18  lack confidence in the partiality of the arbitrator since Defendants are "repeat players" with

19  JAMS.  (Doc. 42 p. 24).  Although some California courts have expressed concerns that the

20  "repeat player" effect may render some arbitration arrangements biased in favor of large entities

21  who frequently appear in arbitration, this phenomenon does not render an arbitration agreement

22  unconscionable per se; instead, the Plaintiff must produce some particularized evidence that

23  supports an unconscionability finding.  *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1285 (9th

24  Cir. 2006); *Mercuro v. Sup. Ct.*, 96 Cal. App. 4th 167, 178-79 (2002).

25    Accordingly, the Court finds that any limitations on discovery imposed by the arbitration

26  agreement do not render it substantively unconscionable.

27  / / /

28  / / /

14

1     **IV.     Conclusion and Order**

2          For the foregoing reasons, it is HEREBY ORDERED that Defendant Aerotek's Motion to

3     Compel Arbitration (Doc. 41) is GRANTED.

4          It is FURTHER ORDERED that the previously imposed stay (Doc. 55) will remain in

5     effect pending the completion of arbitration.

6          It is FURTHER ORDERED that, no later than June 18, 2024, the parties shall file an

7     initial joint status report informing the Court of the status of the arbitration proceedings.

8          It is FURTHER ORDERED that the parties shall file a joint status report indicating the

9     outcome and/or status of the underlying action every ninety (90) days after filing the initial status

10    report (referenced in the paragraph above) until the dispute between the parties has been settled or

11    otherwise resolved.

12         It is FURTHER ORDERED that Defendants shall file a notice with the Court within thirty

13    (30) days of the completion of arbitration.

14    IT IS SO ORDERED.

15    Dated:   **May 8, 2024**          _____

16                                       UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28